1

2

3

4        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
5                   AT SEATTLE

6

7    RICHARD BACH, et al.,

8                              Plaintiffs,            No. C05-970MJP

9    v.                                               ORDER GRANTING IN PART AND
                                                      DENYING IN PART PLAINTIFFS'
10   FOREVER LIVING PRODUCTS U.S., INC., et           MOTION FOR PARTIAL
                                                      SUMMARY JUDGMENT ON
     al.,                                             COPYRIGHT INFRINGEMENT OF
11                                                    JONATHAN LIVINGSTON
                               Defendants.            SEAGULL CHARACTER AND
12                                                    DENYING DEFENDANTS' CROSS
                                                      MOTION
13

14

15         This matter comes before the Court on the parties' cross motions for partial summary

16   judgment on Plaintiffs' copyright claims regarding the Jonathan Livingston Seagull character. (Dkt.

17   Nos. 79 & 97).  Having considered the parties' briefs, including Plaintiffs' supplemental brief (Dkt.

18   No. 129), as well as all of the documents submitted in support thereof, the Court GRANTS IN PART

19   and DENIES IN PART Plaintiffs' motion and DENIES Defendants' motion.  The Court also

20   DENIES Defendants' motion to strike.

21                                   **BACKGROUND**

22         Many of the facts pertinent to these motions have already been described.  As explained in the

23   order on Plaintiffs' trademark claims, (Dkt. No. 143) this case arises from Defendants' use of the

24   title, character, name, text, and photographs associated with the book Jonathan Livingston Seagull.

25   The book was written by Richard Bach and was published in 1970.  The photographs which appear in

26   the book were taken by Russell Munson.  Mr. Bach and Mr. Munson are the plaintiffs in this case.

ORDER - 1

Defendants Forever Living Products U.S., Forever Living Products International, and Aloe Vera of America (collectively "Forever Living Products" or "FLP") are affiliated companies that manufacture and distribute health and beauty products through "direct sales" or "multi-level marketing," in a fashion similar to that used by the company Avon. (Lloyd Decl. ¶ 2). The name "Forever Living Products" also refers to over 150 domestic and foreign affiliated businesses that sell and distribute Forever Living health and beauty products. (Id.). Defendant Forever Resorts provides management services for resorts located in the United States. (Id. ¶ 6). Rex Maughan is the founder, CEO, and President of FLP and is a manager of Defendant Forever Resorts. Rex Maughan also has an ownership interest in substantially all of the 100+ foreign affiliates of Forever Living Products. (Id. ¶ 9).

Plaintiffs allege that Defendants have used a copyrighted photograph from Jonathan Livingston Seagull as their corporate logo, and have used copyrighted excerpts from Jonathan Livingston Seagull, and the copyrighted story and character of Jonathan Livingston Seagull in their advertising, promotional, and training materials, in communications with their independent distributors, in their sale and distribution of FLP products, and in the advertising, marketing and promotion of Forever Resorts' recreational properties. (Third Am. Compl. ¶ 4).

In support of their argument that FLP has infringed the Jonathan Livingston Seagull character, Plaintiffs present evidence of how FLP has used the Jonathan Livingston Seagull character to motivate, unify, and recruit new distributors into the organization. In its own publications and public statements, FLP itself explains how it has used the Jonathan Livingston Seagull character. For example, in a recent promotional video, FLP's Marketing Director, Aidan O'Hare explained the power of the "Jonathan brand":

> That's brand power. And that's what we've built here in Forever over 25 years is a brand power. People want aloe vera. They think Forever. And that's what the importance of a brand is. You help the decision made prior to them actually going in and using the product.
>
> No one can doubt the power of Jonathan. Look back over the last 25 years. We've built a brand that is just remarkable. . . .

For example, <u>I remember getting off a plane in Sweden and you know I was new and didn't know where I was going and I looked in the crowd and there's a guy with a sign with Jonathan on it. And immediately you are with family, you're with friends. And that's what you'll feel when you come here. You'll see all the Jonathans around the hotel and you see them when you go back to your own country.</u>

<u>Jonathan means more than . . . just a design on a piece of paper. It means the feeling that Forever is and what it has built over the last 25 years.</u> And we want to build on that. Rex said I want the brand to say quality. I want it to say cleanliness. I want it to be transparent. I want it to say value. All the things which are vitally important. And so we started to build the packets that you see now.

First of all, <u>let's talk about Jonathan. Jonathan was an ordinary bird that went beyond. And that's pretty much where our brand is going now, and so we put Jonathan at the top of the package.</u> And also we did it with a foil treatment which means he shines. It's in recognition of our 25 years. <u>Jonathan is really the basis of what Forever is about. It's taking ordinary things and making them extraordinary.</u> . . .

And what better way can Rex demonstrate his commitment to us and our future and the time and the energy and resources gone into strengthening <u>the Jonathan brand</u> and providing us with the best packaging possible to build into the next 25 years. . . .[1]

(Geyman Decl., Ex. 13) (emphasis added).

Similarly, in 2004, FLP created a "Style Guide" entitled "Helping the Brand Soar — Forever Living Products Style Guide." In the guide, FLP dictates how the "Jonathan Livingston Seagull" logo is to be used and presented. The guide explains that "[t]he Forever Living Products logo, Jonathan Livingston Seagull, represents the company's ability to continually soar higher — no matter what. Jonathan inspires strength through consistency, and is a key part of establishing and maintaining a lasting corporate image." (<u>Id.</u>, Ex. 14).

Other statements made by FLP and its employees show how FLP used the Jonathan Livingston Seagull character as a metaphor for the philosophy of the company. For example, one FLP Vice President described his introduction to FLP:

It was in late May 1978 that I attended a meeting of a brand new company that marketed aloe vera (whatever that was!). I was told that the philosophy of this company was based on the story of Jonathan Livingston Seagull, which immediately grabbed my attention.

---

[1]      Aiden O'Hare stated during his deposition that this video was shown at an FLP rally in Dallas attended by 3,000 FLP distributors from around the world. (Phillips Decl., Ex. 16 (O'Hare Dep. at 201-206)).

(<u>Id.</u>, Ex. 16).  Another example is an article in a May 2005 issue of <u>Forever New Zealand</u> describing

the meaning behind the seagull logo:

> People often ask us what a picture of a seagull is doing on all our products, so we
> thought we'd best put in an explanation.  When Rex Maughan was first starting to
> create Forever Living Products, he of course needed a logo.  What came to his mind
> was a book he had read as a young man that has been a great source of inspiration to
> him, a book called Jonathan Livingston Seagull. . . .  Because Rex was so moved by this
> story, he decided to use Jonathan as the enduring logo of Forever Living Products.  It's
> a story of one bird that doesn't want to settle for the limitations put on him by other
> birds, and through persistence and practice is able to fly faster, higher, and further than
> all the rest.  He of course goes on to teach others how they can do it too!  Sounds  a
> lot like FLP distributors, doesn't it?

(<u>Id.</u>, Ex. 60).  And the FLP website, <u>www.foreverliving.com</u>, used to include the following text:

> "Dare to Soar" — just like Jonathan Livingston Seagull.  Jonathan's story, told in
> Richard Bach's "Jonathan Livingston Seagull," serves as an inspiration and provides us
> with a wealth of valuable lessons about our own business.  Jonathan succeeded not
> because he was any different from his fellow seagulls or because he had more money,
> opportunity or credentials.  He succeeded because he worked a little harder, slept a little
> less, believed in himself a little more, and went out and "did it" again and again.  Despite
> intense criticism and rejection, in the face of failure, personal injury and loneliness,
> Jonathan never gave up; he stayed the course and believed strongly in what he was
> doing.  That's why he remains a proud symbol of Forever Living Products' spirit to this
> day!

(<u>Id.</u>, Ex. 62).

Plaintiffs point to other evidence that demonstrates how FLP used the Jonathan Livingston

Seagull character.  First, FLP has consistently called its logo "Jonathan Livingston Seagull" or

"Jonathan." (<u>Id.</u>, Ex. 16-17).  Second, for over 20 years, FLP has given "Jonathan" bonuses to

successful distributors. (<u>Id.</u>, Ex. 18).  As explained in an FLP publication,

> This bonus is named after Jonathan Livingston Seagull, the allegorical seagull from the
> story by Richard Bach.  One theme of the allegory is that 'The gull sees farthest who
> flies highest'.  The GEM Managers are the managers in Forever Living Products who
> have flown the highest and, therefore, receive these very lucrative additional bonus
> incentives.

(<u>Id.</u>, Ex. 20).  Third, FLP gives top-selling distributors statues of "Jonathan Livingston Seagull". (<u>Id.</u>,

Ex. 21).  Fourth, FLP calls its distributors "Jonathans". (<u>Id.</u>, Ex. 22).  And fifth, FLP holds "Jonathan

Days" to recognize and reward distributors. (<u>Id.</u>, Ex. 23).  Plaintiffs allege that this, and other,

evidence proves that FLP has infringed on the Jonathan Livingston Seagull character in violation of

the Copyright Act, 17 U.S.C. § 501.

ORDER - 4

1    The parties have brought cross-motions for summary judgment on the issue of copyright

2    infringement of the Jonathan Livingston Seagull character. The parties dispute whether (a) Plaintiffs

3    still own the copyright to the Jonathan Livingston Seagull character; (b) the character copyright is

4    valid; and (c) FLP actually copied or infringed the character of Jonathan Livingston Seagull.  In their

5    response to Plaintiffs' motion, Defendants request that the Court strike all documents created by

6    "non-defendant entities."

7                                            **ANALYSIS**

8    **I.      Motion to Strike**

9            Defendants move to strike as irrelevant materials presented by Plaintiffs that were created by

10   "non-defendant entities." (FLP Resp. at 3).  Defendants are referring to materials from FLP's foreign

11   affiliates, such as Forever Living India and Forever Living New Zealand.  Plaintiffs oppose the motion

12   to strike.  Plaintiffs argue that because FLP directly supervises and controls these affiliated offices and

13   because they are wholly-owned by Rex Maughan, the materials produced by the foreign offices are

14   relevant.

15          The motion to strike is DENIED.  Defendants' relevance objection is not a sufficient reason

16   to strike the exhibits.  See, e.g., Powers v. Runyon, 974 F. Supp. 693, 697 (S.D. Ind. 1997) (noting

17   that it is normally "inappropriate . . . to strike materials submitted in support of or in opposition to a

18   motion for summary judgment on the grounds of relevance").  Moreover, the motion is moot because

19   even without the evidence from foreign affiliates, there is ample evidence of copying by the named

20   Defendants.

21          The Court takes a moment to note its frustration with the parties' overuse of footnotes in

22   their briefing throughout this case.  Defendants brought their motion to strike in a footnote in their

23   responsive brief.  The practice of putting substantive material in footnotes provides difficult reading

24   for the Court and is used by the parties to avoid the page limitations in the local rules.  It is also poor

25   advocacy: a request in a footnote is much more likely to be overlooked or missed by the Court.  If an

26   argument is worth making, a party should put the argument in the body of its brief.

## II.        Standard on Summary Judgment

This matter is before the Court on the parties' cross-motions for summary judgment. Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

Where the parties file cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Fair Housing Council of Riverside County v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." Riverside Two, 249 F.3d at 1136.

A central issue in most copyright infringement cases is whether the allegedly infringing and infringed works are "substantially similar." "'Although summary judgment is not highly favored on questions of substantial similarity in copyright cases, summary judgment is appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the non-moving party, that no reasonable juror could find substantial similarity of ideas and expression

ORDER - 6

1  . . . .   Where reasonable minds could differ on the issue of substantial similarity, however, summary

2  judgment is improper.'"  Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002)

3  (quoting Shaw v. Lindheim, 919 F.2d 1353, 1355 (9th Cir. 1990)).  If a triable issue of fact is shown

4  on the "extrinsic" prong of the substantial similarity analysis, then the "intrinsic" inquiry must be left

5  to the jury and summary judgment must be denied.  Cavalier, 297 F.3d at 824.

6  **III.    Copyright Infringement**

7      To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright

8  and (2) copying of constituent elements of the work that are original.  Feist Publ'ns, Inc. v. Rural Tel.

9  Serv. Co., 499 U.S. 340, 361 (1991); Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d 1072,

10  1076 (9th Cir. 2006).  In this case, Defendants challenge, and Plaintiffs seek to establish, all three

11  elements — ownership, the validity of the copyright in the Jonathan Livingston Seagull character, and

12  copying.

13      **A.    Ownership of Copyright**

14      Defendants challenge Plaintiffs' ownership of the copyright at issue.   As Plaintiffs point out, a

15  certificate of copyright registration is prima facie evidence of the validity of a copyright.  17 U.S.C.

16  410(c)(1994); Three Boys Music Corp. v. Bolton, 212 F.3d 477, 488-89 (9th Cir. 2000).  Plaintiffs

17  possess copyright registrations and renewals for Jonathan Livingston Seagull.  (Geyman Decl., Ex.

18  51).  Defendants argue that they can rebut the presumption in this case — they argue that Plaintiffs

19  assigned the copyright in the Literary Purchase Agreement ("LPA") executed with Hall Bartlett in

20  1972.  Defendants also argue that Plaintiffs' "secretive efforts to strike a deal with the current holder

21  of the Bartlett rights . . . to share proceeds from the litigation . . . raises an issue of fact [on the issue

22  of] ownership of any copyright in the JLS character." (FLP Resp. at 25).  But as the Court concluded

23  in its previous order on Plaintiffs' trademark claims, the LPA licensed to Bartlett only the rights to the

24  novel for the purposes of making a movie and associated merchandising, and reserved to Mr. Bach all

25  rights not granted to Mr. Bartlett.  The LPA also expressly grants Mr. Bach the right to enforce any

26  infringement of any rights licensed under the LPA.  The LPA therefore does not limit Mr. Bach's

right to enforce the copyright here.  And Plaintiffs point out that Mr. Bach purchased his copyrights

1   out of bankruptcy in 1982 and has held them ever since.  (Supp. Geyman Decl., Ex. D & E).  The

2   Court concludes as a matter of law that Mr. Bach owns the copyright at issue here.

3         **B.**        **Validity of Character Copyright**

4         A court may decide on summary judgment whether a character deserves copyright protection.

5   See Walt Disney Prods. v. Air Pirates, 581 F.2d 751, 754-55 (9th Cir. 1978) (affirming grant of

6   summary judgment holding that Disney characters were protected by copyright); Newton v.

7   Diamond, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002).  "While characters are ordinarily not

8   afforded copyright protection . . . characters that are 'especially distinctive' or the 'story being told'

9   receive protection apart from the copyrighted work." Rice v. Fox Broad. Co., 330 F.3d 1170, 1175

10   (9th Cir. 2003).  Courts have given copyright protection to characters that are highly delineated or

11   play a central role in an overall work.  See Anderson v. Stallone, 11 U.S.P.Q.2d 1161, 1165-67 (C.D.

12   Cal. 1989) (concluding that Rocky characters are both highly delineated and the "story being told" in

13   the movies Rocky I, II, and III); Toho Co., Ltd. v. William Morrow and Co., 33 F. Supp. 2d 1206,

14   1216 (C.D. Cal. 1989) (Godzilla character protected); Metro-Goldwyn-Mayer, Inc. v. Am. Honda

15   Motor Corp., 900 F. Supp. 1287, 1297 (C.D. Cal. 1995) (James Bond character protected);

16   Universal City Studios, Inc. v. Kamar Indus., Inc., 217 U.S.P.Q. 1162, 1165 (S.D. Tex. 1982) (E.T.

17   character protected); see also Shaw v. Lindheim, 919 F.2d 1353, 1363 (9th Cir. 1990) (relying on

18   similarity between plaintiff and defendant's lead characters in determining that plaintiff had raised a

19   triable issue of fact on substantial similarity of entire works).  But where the characters are not

20   sufficiently delineated or are not the central focus of the work, courts decline to give the characters

21   copyright protection.  See Rice, 330 F.3d at 1175-76 (holding that magician who wore standard

22   magician garb and revealed magic tricks and who was not the focus of the story was not protected

23   under copyright); Cavalier, 297 F.3d at 825 (holding that anthropomorphized moon character is

24   unprotectable stock character in children's literature); Olson v. Nat'l Broad. Co., 855 F.2d 1446,

25   1452-53 (9th Cir. 1988) (holding that characters in television series — three Vietnam veterans who

26   conducted scams in Vietnam and continue to do so as civilians — were not delineated enough to

warrant copyright protection).

ORDER - 8

1    In determining whether a character deserves copyright protection, courts look at the many

2    elements of the character — visual depictions, name, dialogue, relationships with other characters,

3    their actions and conduct, personality traits, and written descriptions — to determine whether it is

4    sufficiently delineated such that it is a unique expression.  See Funky Films, 462 F.3d at 1078-79

5    (looking at characters' actions, dialogue, and interactions with other characters); Olson, 855 F.2d at

6    1452 (looking at character summaries in series treatment, dialogue, and action when determining

7    whether character deserved protection); Anderson, 11 U.S.P.Q.2d at 1166-67 (considering Rocky's

8    physical attributes, speaking mannerisms, and the fact that his name was also the title of the movies

9    about him); see also Shaw, 919 F.2d at 1363 (noting lead character's main personality trait — self-

10   assuredness — and the fact that he was well dressed, wealthy, and had expensive taste).

11         Defendants argue here that the Court needs to "dissect" the Jonathan Livingston Character to

12   decipher which elements of the character are protectable and which are not before comparing the

13   protectable ones to Defendants' allegedly infringing work.  It is true that in the context of an assertion

14   that an entire literary work, or song, or computer program infringes on another, courts have dissected

15   the work in search of its protectable elements.  For example, in Rice, a case about whether

16   defendant's television series infringed on plaintiff's script and video, the Ninth Circuit explained that

17   it "must distinguish between the protectable and unprotectable material because a party claiming

18   infringement may place 'no reliance upon any similarity in expression resulting from unprotectable

19   elements.'" Rice, 330 F.3d at 1174 (quoting Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435,

20   1446 (9th Cir. 1994)).  In Cavalier, a case about whether defendant's children's book series infringed

21   on plaintiff's book series, the Ninth Circuit explained that "when applying the extrinsic test, a court

22   must filter out and disregard the non-protectable elements in making its substantial similarity

23   determination." Cavalier, 297 F.3d at 822.  But in cases that have focused substantially on character

24   infringement, rather than considering the character as one element of an entire story, courts have not

25   done a similar dissection. See Anderson, 11 U.S.P.Q.2d at 1166 (looking at combination of physical

26   and emotional characteristics, speaking mannerisms, interrelationships, and the fact that the name of

     the character is also the title of the movie to determine that Rocky character deserves copyright

ORDER - 9

protection); <u>Toho</u>, 33 F. Supp. 2d at 1216 (C.D. Cal. 1998) (determining that Godzilla character was well-defined and highly delineated because "Godzilla is always a pre-historic, fire-breathing, gigantic dinosaur alive and well in the modern world"); <u>Metro-Goldwyn-Mayer</u>, 900 F. Supp. at 1296 (concluding that James Bond character was sufficiently delineated and the "story being told" and pointing to his "cold-bloodedness; his overt sexuality; his love of martinis 'shaken, not stirred;' his marksmanship; his 'license to kill' and sue of guns; his physical strength; [and] his sophistication"); <u>see also</u> <u>Shaw</u>, 919 F.2d at 1363 (looking at the combination of elements that make up lead character — he was well dressed, wealthy, had expensive taste and was self-assured).

Thus it is the unique combination of elements that makes up a protected character. The Court will therefore consider whether Jonathan Livingston Seagull is sufficiently delineated or "the story being told" considering the combination of all the elements of his character.

Plaintiffs argue that like Rocky, James Bond, Godzilla, and others, Jonathan Livingston Seagull is a highly delineated character that warrants copyright protection. Plaintiffs contend that the Jonathan Livingston Seagull character is a "one-of-a-kind seagull — a thinking, talking, philosophizing, risk-taking, limit-testing seagull." (Pls.' Resp. at 7.) Specifically, they explain that Plaintiffs' expression, revealed through the dialogue, thoughts, actions, and interactions in the book, is:

    (1)    an image of an ordinary seagull;

    (2)    with an extraordinary name, Jonathan Livingston Seagull;

    (3)    who is anthropomorphized into a human-like character who distinguishes himself by flying higher and faster and farther than any gull has ever flown before;

    (4)    and who emerges as an extraordinary and enlightened seagull who teaches other seagulls so that they might similarly lift themselves from a conventional life of scavenging the shores for food to extend themselves and succeed beyond their ordinary lives.

(Pls.' Resp. at 7-8.) This description accurately reflects Plaintiffs' rendering of the Jonathan Livingston Seagull character in the novel, which has been included as one of the exhibits.[2] (See

---

[2]    Defendants argue that Plaintiffs have not identified the "source", that is, the specific sections of the novel, that give rise to the Jonathan Livingston Seagull character. But as Plaintiffs point

1  McDougall Decl. ¶ 3, at 13-78).  Moreover, the name of the character and the title of the book are

2  the same.

3       Defendants argue that the Jonathan Livingston Seagull character can be reduced either to a

4  collection of unprotectable ideas (see FLP Resp. at 11-13) or to a combination of unprotectable

5  elements (see FLP Mot. at 6; FLP Reply at 6-7).  First, FLP points to three common ideas in the

6  Jonathan Livingston Seagull character: a character who pursued a higher purpose despite obstacles,

7  criticism, and ostracism, and achieved reward; a character who sought to overcome the ordinary to

8  become extraordinary; and a character who sought to help others realize their potential. (FLP Resp.

9  at 12).  FLP argues that these themes are common literary themes that do not deserve protection.

10  Second, FLP argues that (1) images of animals in nature are not protectable, (2) Jonathan Livingston

11  is not an original name (it is the name of a pilot Mr. Bach knew), (3) the story of an

12  anthropomorphized seagull is a common one, and (4) the story of a character emerging extraordinary

13  and enlightened is a stock story.  FLP also points out that Jonathan's physical characteristics are not

14  well delineated in the story, which Plaintiffs do not contest.  And FLP argues that the Jonathan

15  Livingston Seagull character has not been developed over time, as was the case in the cases involving

16  James Bond and Godzilla.

17       FLP's arguments are misplaced.  Every literary character has elements that are not original,

18  but, as explained above, courts look to the combination of those elements to determine whether the

19  character is protectable.  Like other highly delineated literary and film characters, the Jonathan

20  Livingston Seagull character is protected under copyright.  Jonathan Livingston Seagull is a well-

21  defined character — an ordinary seagull named Jonathan Livingston Seagull who is determined to fly

22  higher and faster, who transcends his beginnings, and who teaches others to do the same.  He is not a

23  stock character and the fact that his character has not been delineated over time is inconsequential.

24

25  _____

26  out, Jonathan Livingston Seagull is delineated on almost every page of the novel. And Plaintiffs have also
pointed to specific passages that support their characterization of the Jonathan Livingston Seagull
character. (See Pls.' Resp. at 7-8 and nn. 16-17).

ORDER - 11

1  See Kamar Indus., 217 U.S.P.Q.2d at 1167 (granting preliminary injunction regarding E.T.

2  character).

3        Defendants also argue that the Jonathan Livingston Seagull character is not protectable under

4  the merger and scenes a faire doctrines.  Copyright protection only extends to original expressions,

5  not ideas.  Metcalf v. Bochco, 294 F.3d 1069, 1074 (9th Cir. 2002).  When an idea and expression

6  merge, there is no copyright protection.  Rice, 330 F.3d at 1174.  As one court explained, where the

7  underlying ideas are, for example, jewel-encrusted bee forms, stuffed dinosaurs, or karate video

8  games, a high degree of similarity is inevitable between the allegedly infringing and infringed works

9  because it is difficult to express the underlying idea in more than one way.  Shaw, 919 F.2d at 1360.

10 Moreover, under the similar doctrine of "scenes a faire," the "expressions indispensable and naturally

11 associated with the treatment of a given idea are treated like ideas and are therefore not protected by

12 copyright."  Rice, 330 F.3d at 1175 (internal quotation marks omitted).  Thus, in the case of a story

13 about a magician revealing the secrets behind magic tricks, the story line of a masked magician

14 revealing tricks flowed naturally from the idea and was found to be unprotectable.  Id. at 1176.

15       These doctrines are not applicable here.  The expression of the Jonathan Livingston Seagull

16 character does not flow from the ideas underlying it.  The themes and ideas Jonathan Livingston

17 Seagull espouses are not, as Defendants argue, monopolized by the fact that his character is protected

18 by copyright.  Indeed, there are limitless metaphors for the ideas of achievement, perseverance, and

19 enlightenment.  The unique expression of those ideas through the story of Jonathan Livingston

20 Seagull is protectable.

21       In addition, to the extent that a character is protectable because it is the "story being told,"

22 Jonathan Livingston Seagull is protectable.  He is the "story being told" and is not a mere "chessman

23 in the game of telling the story."  See Warner Bros. Pictures, Inc. v. Columbia Broad. Sys., 216 F.2d

24 945, 950 (9th Cir. 1954) (opining that "[i]t is conceivable that the character really constitutes the

25 story being told, but if the character is only the chessman in the game of telling the story he is not

26 within the area of the protection afforded by the copyright").  He is the title character in a book that

ORDER - 12

is entirely about <u>his</u> development from an ordinary seagull to an extraordinary one.  His character is protectable under this doctrine as well.

### C.     Infringement

"Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." <u>Funky Films</u>, 462 F.3d at 1076 (internal quotation marks omitted).  Where a high degree of access is shown, the Ninth Circuit employs the "inverse ratio rule" and "require[s] a lower standard of proof of substantial similarity." <u>Rice</u>, 330 F.3d at 1178.  To determine whether two works are "substantially similar," the Ninth Circuit applies a two-part analysis — an extrinsic test and an intrinsic test.  <u>Funky Films</u>, 462 F.3d at 1077.  "At summary judgment, courts only apply the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." <u>Id.</u>; <u>Shaw</u>, 919 F.2d at 1360-61 (noting that it is for the jury to decide whether the total "concept and feel" of the works are similar).

### 1.     The Allegedly Infringing Work

One issue in this case is the vast difference in media between the allegedly infringing and infringed works.  This is not a case where one author allegedly used the creative expression of another in his own literary work.  Instead, Plaintiffs argue that FLP copied the combined expressive elements of the Jonathan Livingston Seagull character in creating FLP's "Jonathan" brand.  Plaintiffs explain: "FLP has expressed its 'Jonathan' brand by using the character as the embodiment of the company, its graphic representation and expressive icon, its unifying story and text, the name of its logo which it calls 'Jonathan Livingston Seagull,' and as the character model that it urged its millions of distributors to emulate." (Pls.' Resp. at 12-13).

FLP disputes the characterization of its "brand."  FLP argues that its brand is not the "Jonathan" brand; FLP argues that its brand is composed of its products, organizational culture and attributes, personal identity, and expression, including the Forever Living name and its distinct rendering, none of which bears any relations to Jonathan Livingston Seagull. (FLP Reply at 13).  Specifically, FLP argues that "Jonathan" refers to the graphic symbol of the company, not the brand;

that FLP has not consistently throughout its business used the Jonathan Livingston Seagull symbol or name; and that the Style Guide relied upon by Plaintiffs was never completed, implemented, or used. FLP also presents evidence indicating that none of its 81 trademarks or its product names include the words "Jonathan" or "Jonathan Livingston Seagull" (Supp. McDougall Decl., Ex. I-J), and that its marketing plan is not based on Jonathan Livingston Seagull. (Id., Ex. N).  And FLP has presented expert testimony that rebuts Plaintiffs' expert's conclusion that the FLP brand is the "Jonathan" brand. (McDougall Decl., Ex. O, F).  FLP asserts that the evidence it has proffered regarding its brand warrants denial of Plaintiffs' copyright claims and, at the very least, raises a genuine issue of material fact about the role and significance of the Jonathan Livingston Seagull character to the Forever Living brand.

"The question in each case is whether the similarity relates to matter that constitutes a substantial portion of plaintiff's work -- not whether such material constitutes a substantial portion of defendants work." 4 Nimmer, Nimmer on Copyright, § 13.03[A][2][a] (2006) (emphasis added); see also Worth v. Selchow & Righter Co., 827 F.2d 569, 571 n.1 (9th Cir. 1987) ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the plaintiff's work was appropriated — not whether a substantial portion of defendant's work was derived from plaintiff's work.").  Thus, the fact that FLP may not have based its entire brand on the Jonathan Livingston Seagull character is not material.  Here, Plaintiffs have alleged that FLP appropriated a substantial portion of Plaintiffs' work — the entire Jonathan Livingston Seagull character.  Defendants' argument that their use is basically de minimis is not supported by the record in this case.  The Court will compare the Jonathan Livingston Seagull character to those elements of the Forever Living brand that utilized the Jonathan character.

### 2. Substantial Similarity — Extrinsic Test

Although Plaintiffs have presented evidence of direct copying in this case, the Court analyzes Defendants' alleged infringement under the substantial similarity test.  As Professor Nimmer has explained, even where there is evidence of direct copying, "copying as a legal proposition must still be established; hence, substantial similarity remains an indispensable element of plaintiff's proof, even in

ORDER - 14

1    cases (such as <u>Feist [Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991)]) in which

2    defendant does not contest factual copying." 4 Nimmer, <u>supra</u>, § 13.01[B].

3        Plaintiffs argue that the Jonathan Livingston Seagull character that is part of the FLP brand is

4    substantially similar to the Jonathan Livingston Seagull character in Plaintiffs' book.  As mentioned,

5    the Court only considers the "extrinsic" test for substantial similarity; it is up to the jury to determine

6    whether the works are substantially similar under the "intrinsic" test.  <u>See</u> <u>Funky Films</u>, 462 F.3d at

7    1077.  The extrinsic test is an objective measure of the articulable similarities between the expressive

8    elements of the works.  <u>Funky Films</u>, 462 F.3d at 1077; <u>Rice</u>, 330 F.3d at 1174.  Where a high degree

9    of access to the infringed work is shown, there is a lower standard of proof of substantial similarity.

10   <u>Rice</u>, 330 F.3d at 1178.  The underlying question in this analysis is whether "[t]he totality of the

11   similarities [between the works] . . . goes beyond the necessities of the . . . theme and belies any claim

12   of literary accident."  <u>Metcalf</u>, 294 F.3d at 1074 (quoting <u>Shaw</u>, 919 F.2d at 1363).

13       In this case, FLP's access to the work is uncontested.  FLP publications describe how Rex

14   Maughan read <u>Jonathan Livingston Seagull</u>, found it to be a "great source of inspiration" and

15   "decided to use Jonathan as the enduring logo of Forever Living Products." (Geyman Decl., Ex. 60;

16   <u>see also</u> <u>id.</u>, Ex. 16 & 19).

17       The Court objectively compares individual aspects of the Jonathan Livingston Seagull

18   character with the ways in which FLP has used the character:

19       (1)    FLP uses an ordinary seagull, which is virtually identical to one of the copyrighted
              photographs in Plaintiffs' book (Geyman Decl., Ex. 59);

20       (2)    FLP calls its logo "Jonathan Livingston Seagull" (<u>Id.</u>, Ex. 14, 16, 17);

21       (3)    FLP uses Jonathan's story of persevering to fly higher and faster than any gull has
22              flown before to inspire its distributors to buy and sell more products and recruit more
              distributors.  For example, a 1987 article in <u>Forever Living Magazine</u> quotes <u>Jonathan</u>
23              <u>Livingston Seagull</u> and states: "We can lift ourselves out of ignorance, we can find
              ourselves as creatures of excellence, intelligence, and skill.  We can be free!  We can
24              learn to fly!" in an article describing financial incentives and bonuses for distributors.
              (Supp. Geyman Decl., Ex. K).  And in <u>The Forever Enterprise</u>, FLP's VP of Finance,
25              Glen Banks, quotes <u>Jonathan Livingston Seagull</u> and states: "The gull sees farthest
              who flies highest" in describing the "Jonathan Bonus" for FLP's managers who have
26              "flown highest" and therefore "receive these very lucrative additional bonus
              incentives." (Geyman Decl., Ex. 20); and

(4)   FLP suggests that, like Jonathan Livingston Seagull, its distributors will emerge as an extraordinary group of "Jonathans" who will become new leaders and will recruit new "Jonathans" and who will achieve financial success so they can lift themselves above their ordinary lives.  For example, in the 1986 issue of <u>The Forever Lifestyle</u>, the author states "As you may recall, Jonathan Livingston Seagull soared to greater heights by helping his students emulate his extraordinary flight skills.  At Forever Living Products, we too have Jonathans.  They're called Soaring Managers.  These special teachers have worked closely with five personally sponsored distributors, helping each one develop the leadership skills necessary to become a Manager.  Just like Jonathan, our Soaring Managers will soon reach new realms as they evolve to Gem status.  We'd like to take this opportunity to recognize our 'Jonathans' and wish them all happy soaring!" (<u>Id.</u>, Ex. 22).

Applying the inverse ratio rule, Plaintiffs' burden to show objective similarity is lessened because access to the novel and the Jonathan Livingston Seagull character is undisputed.  Given the evidence proffered by Plaintiffs, Plaintiffs have raised a triable issue of fact on the question of substantial similarity.  The Court concludes that there is objective similarity between Plaintiffs' Jonathan Livingston Seagull character and the seagull character used by FLP as part of its brand.  But it remains for the jury to decide whether the total look and feel of the character and FLP's use of Jonathan Livingston Seagull as part of its brand are the same.

## IV.    Other Issues

Defendants raise two other minor issues.  First, Defendants argue that to the extent Plaintiffs' motion for summary judgment is against FLP founder and executive Rex Maughan, it must be denied because he had not yet appeared or conducted any discovery when Plaintiffs brought their motion.  But Plaintiffs only brought their motion against the four corporate defendants, not Rex Maughan.  Rex Maughan has since appeared. (Dkt. No. 94).  If Plaintiffs want to pursue summary judgment against him on these same issues, they must do so by separate motion.

Second, Defendants argue that Plaintiffs cannot request summary judgment in favor of both Mr. Bach and Mr. Munson because up until the motion, Plaintiffs claimed that Mr. Munson held copyrights only in the photographs in U.S. editions of the book and that Mr. Bach held any copyright in the Jonathan Livingston Seagull character.  Defendants request that the Court deny any claim by Mr. Munson for infringement of the Jonathan Livingston Seagull character.  But Plaintiffs produced as part of their initial disclosures a 1969 agreement between Mr. Bach and Mr. Munson under which

they agreed to divide the financial returns from the novel <u>Jonathan Livingston Seagull</u> on an 80/20 basis. (Second Supp. Geyman Decl., Ex. 21).  Based on this agreement and Mr. Munson's financial interest in the character, the Court declines to grant summary judgment denying Mr. Munson's claim for infringement of the Jonathan Livingston Seagull character.

**CONCLUSION**

Because Plaintiffs own the copyrights and because the Jonathan Livingston Seagull character is protectable, Plaintiffs have a viable claim for copyright infringement of the Jonathan Livingston Seagull character.  Plaintiffs have raised a triable issue of fact regarding whether the Jonathan Livingston Seagull character and the seagull character used by Defendants as part of their brand are substantially similar.  The Court therefore DENIES Defendants' motion for summary judgment and GRANTS IN PART AND DENIES IN PART Plaintiffs' motion.  The Court also DENIES Defendants' motion to strike.

The clerk is directed to send a copy of this order to all counsel of record.

Dated: February 13th, 2007.

Marsha J. Pechman
United States District Judge

ORDER - 17